No. 14,438.

UNION HIGH SCHOOL DISTRICT No. 2, PROWERS COUNTY *v.* PAUL.
(95 P. [2d] 5)

Decided September 25, 1939. Rehearing denied October 30, 1939.

Mr. GORDON ALLOTT, Mr. ARTHUR C. GORDON, for plaintiff in error.

Messrs. HORN & HORN, Mr. ALFRED TODD, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS action was to recover damages for breach of a teacher's contract under which the Union District, plaintiff in error, hereinafter mentioned as the district, purportedly employed the defendant in error for twelve months beginning in September, 1937, to teach commercial subjects in its high school. At the time of the opening of school in that month the district refused to permit her to assume her duties under the contract because of her alleged failure to procure or have a license or certificate to teach as provided by statute. Following

the introduction of the evidence the trial court directed a verdict for the teacher and the district brings, the resulting judgment here for review. It is conceded that the only license which the teacher had at the time of the signing of the contract and when she presented herself to teach was as follows:

"September 23, 1935.

"To Whom It May Concern:

We, the undersigned officials of Union High School District No. 2, Prowers County, Colorado, hereby grant to Miss Lena C. Paul the privilege to teach the Commercial Courses in our high school for three years, beginning September 1, 1935.

"H. C. Nevius,
President U. High No. 2
"Neill B. McGrath,
Secretary U. High No. 2."

The defense is predicated upon the contention that this alleged license to teach was void because of the lack of authority on the part of the Union High School District board to license the teacher. Under section 219, chapter 146, '35 C. S. A., subject to certain exceptions not pertinent here, district school boards are precluded from employing any person to teach, "unless such person shall have a license to teach, issued from the proper district, county or state authority, and in full force at the date of employment." Section 225, chapter 146, '35 C. S. A., provides that no warrant for expenditure of public funds shall be drawn in favor of any person for services as teacher in any of the public schools of the state unless such person shall hold a legal certificate, and—as does section 219, supra—prescribes that such nonlicensed person who may serve in any school shall forfeit all claims to compensation therefor. Under these or similar statutes our Court of Appeals uniformly announced that the holding of a certificate from a proper licensing authority is a condition precedent to a teacher's right to recover compensation and that a con-

tract employing a teacher who does not possess a valid license is void ab initio. *School District v. Ross,* 4 Colo. App. 493, 36 Pac. 560; *Catlin v. Christie,* 15 Colo. App. 291, 63 Pac. 328; *School District v. Johnson,* 26 Colo. App. 433, 143 Pac. 264. Hence, unless the legal validity of the purported license can be maintained, the teacher must fail in her effort to recover under the contract of employment upon which she relies.

Union High School District No. 2, composed of school district No. 14, embracing the city of Lamar in which the high school is situate, and thirteen other outlying districts in Prowers county, was organized in 1906 under the provisions of chapter 167, S. L. 1903; which, as amended, is found in sections 171-179, chapter 146, '35 C. S. A. Neither in the original act or subsequent statutes immediately relating to union high school districts nor in the general laws granting certain powers to school boards of every kind of district—section 89, chapter 146, '35 C. S. A.—is the power to license a teacher directly conferred upon a union high school district. Further, under the statutes, article 9, subdivision 1, chapter 146, '35 C. S. A., and chapter 239, S. L. 1937, generally relating to the licensing of teachers of public schools, by no provision and under no circumstances whatsoever is a union high school district board expressly given such authority. This statutory predicament is recognized by counsel for the teacher in the case before us, who, however, assert that the silence of the Legislature on the subject is indicative of an intent that the implied powers of the school board of a union high school district are those of a district of the first class, which under section 94, chapter 146, '35 C. S. A., has the unquestioned right to prescribe the qualifications of, conduct examinations for, and issue certificates valid only in district of issuance, to special teachers of certain subjects including vocational courses specifically enumerated in the act. In this connection we do not understand that the teacher claims that the Union High

School District ipso facto is a first class district. Such a claim, if made, clearly would be untenable under *Washington County High School District v. Board of Commissioners*, 85 Colo. 72, 273 Pac. 879. She contends, however, that the indicated power arises by implication. In support of this contention her counsel state that for many years previous to the organization of the involved union high school district, a high school had been conducted in Lamar in and by School District No. 14. They point out that the school board of said District No. 14 was invested with all the powers of a board of a district of the first class, and say that had the high school continued under its original status, no question could arise as to the power of that board to license special teachers under the provision of section 94, chapter 146, supra. They then argue that the organization of the Union High School District, within the boundaries of which is included the area of first class District No. 14, as well as some thirteen other outlying districts, legally should not deprive the board of the union district of the licensing authority theretofore enjoyed by it when the high school was conducted by the first class district. Our attention also is directed to the circumstance that under the provisions of section 194, chapter 146, '35 C. S. A., solely relating to *county high school districts*, such districts are expressly granted all the powers exercised by the directors of first and second class districts throughout the state. No statute confers an equivalent authority upon union high school districts. However persuasive the teacher's argument may be as a basis for hypothetically showing the practical propriety of granting to a union high school board powers coextensive with those of a first class district, it can be of no avail under prevailing legislative enactments.

 The legislature has full authority, subject to constitutional restrictions, none of which are involved here, to enact such laws as it may deem necessary and expedient for the proper administration and regulation

of the public schools. *School District v. Union High School,* 60 Colo. 292, 152 Pac. 1149; *Gong Lum v. Rice,* 275 U. S. 78, 48 Sup. Ct. 91, 72 L. Ed. 172. The governing body of a school district has in general only such powers as are expressly conferred upon it by constitutional or statutory provisions, or powers which are incidental to those expressly conferred. *Craig v. People, ex rel.,* 89 Colo. 139, 299 Pac. 1064. Statutes conferring powers or investing duties must be strictly construed and must be treated, not merely as grants of powers, but also as limitations thereon. 56 C. J., p. 332, §202. If in its exclusive province and after a regularly recurring consideration of the subject, the General Assembly had not promulgated the comprehensive system of licensing teachers set out in article 9, subdivision 1, and section 94, chapter 146, supra, under which *only* the boards of first class districts, or others expressly given the authority of boards of that class, are clothed with a limited licensing power, there might be merit to the contention that under the general grants of powers to school districts an implied authority reposed in all district boards to perform this function; but where such right has been so expressly conferred only upon districts of a certain specific class, a limitation on the power of undesignated districts as to this function is thereby created.

▪ Cases based upon the principle announced in *Zimmerman v. Board of Education,* 199 N. C. 259, 154 S. E. 397, and *Nelson v. Board of Education,* 215 Ky. 40, 284 S. W. 386, wherein it was held that where the administration of a school district is transferred by statute from one board to another thereby designated or created, the new board has the same powers, in the absence of any contrary provision of the statute, as had its predecessor, are not helpful to the teacher here. Under the factual situation presented in such cases the new board merely took over the duties of the predecessor board in the operation of a *continuing pre-existing district.* In the case before us the Union High School

District, upon its organization, became a new and distinct entity as to its area, management, financial resources, powers and functions, and obviously did not, by implication or otherwise, acquire the powers of the component pre-existing districts included within its boundaries which, after the formation of the union district, still continued to exercise their integral functions under the management of their respective district boards. Nor can the existence of the power in the union district board to license teachers be implied from the circumstance that it provided vocational instruction in its high school which the teacher asserts is only authorized by section 94, chapter 146, supra, relating to first class districts. Regardless of whether or not the latter statement is correct, concerning which we express no opinion since this question is not herein involved, it is certain that the assumption of a given power by a school board does not imply the existence of another unauthorized power. *People ex rel. v. Board of Education*, 106 App. Div. 101, 94 N. Y. S. 61. We must conclude, therefore, that neither expressly nor by implication was the Union High School District empowered to issue the questioned license to the teacher.

The teacher next contends that the purported certificate issued to her by the Union High School District was ratified by District No. 14, *a first class district*, and so became its act. It is asserted that this ratification is factually established by the circumstance that the teacher before us had taught under this license in the Union High School for the two years immediately preceding this controversy and for a number of years previously under similar certificates and that during all of such time her work was carried on under the direction of the joint-superintendent of District No. 14 and the union district who was acting under the advice of the executive committee of the Union District board which consisted of seven of the eighteen members thereof, to wit: the five members of the board of District

No. 14 and the president and secretary of the Union District board. It is argued that since the entire membership of the board of District No. 14 sat on the executive committee of the Union District, that in effect the board of District No. 14 for such two year period at least, had approved the employment of defendant in error as a teacher under this certificate, and so must be deemed to have approved and ratified her purported license to teach. We seriously doubt whether in any event the evidence was sufficient to establish a ratification, but even if it be conceded that such was the case, the questioned license would not thereby be validated. It is certain that School District No. 14 through ratification could not legally accomplish a result which it could not bring about by its direct action in the first instance. Section 94, chapter 146, supra, on which the teacher relies as granting the inherent licensing authority for the action of School Board No. 14, as a first class district, expressly provides that certificates issued to special teachers "shall be valid only in the district where issued." Therefore, even if in the case before us the teacher had a certificate regularly issued by District No. 14, it would confer no authority upon her to teach in the Union High School District. This conclusion is inescapable under the statute, and as a general proposition under the pronouncement in *Guyer v. Stutt,* 68 Colo. 422, 191 Pac. 120.

Lastly, the teacher contends that during the term of her employment arising under the alleged contract she can be discharged only upon good cause shown after a specific charge and opportunity to be heard thereon before the school board. This contention is grounded upon section 219, chapter 146, '35 C. S. A., which provides as follows: "No district board shall employ any person to teach in any of the public schools of the state, unless such person shall have a license to teach, issued from the proper district, county or state authority, and in full force at the date of employment; and any teacher,

who shall commence teaching in any such school without such license, shall forfeit all claim to compensation out of the school fund for the term so teaching without such license. And if a teacher's license shall expire by its own limitation within a term of employment, such expiration shall not have the effect to stop the school, or stop the teacher's pay; provided, that a teacher whose certificate so expires, if the term of school for which such teacher is employed extends more than one month after such expiration, shall secure a new certificate, or a renewal of the one held while the same is in force; and, provided, further, that a certificate shall not be required of persons employed to teach either music, drawing or modern languages only. No teacher shall be dismissed without good cause shown, and such teacher shall be entitled to receive pay for services rendered." The protection afforded by this statute obviously can only be available to a licensed teacher. As has been demonstrated, the license here upon which the teacher relied was void ab initio. In these circumstances the contract of employment under which she claims, was invalid at the time of its inception and necessitated no revocation by the board. *School District v. Johnson*, supra. Thus, having never been legally employed to teach, she is in no position to contend that she was discharged or that she was entitled to a hearing before the school board.

The unquestioned good faith of the teacher and the satisfactory nature of her services as evidenced by her long employment, coupled with the circumstance that her unfortunate predicament was partially occasioned by the action of the board of the Union District, also doubtless prompted by the best of motives, has led us to devote an unusual amount of time to the consideration of this controversy, but the invalidity of the questioned license to teach is so patently evident that there appears to be no escape from the conclusions herein expressed.

The judgment is reversed and the cause remanded with directions to dismiss the complaint of defendant in error.

MR. JUSTICE YOUNG and MR. JUSTICE BAKKE concur.