JANUARY TERM, 1925. 303

*101 N. J. L.* United N. J. R. R., &c., Co. v. State Bd., &c.

UNITED NEW JERSEY RAILROAD, ETC., COMPANY, PENNSYLVANIA RAILROAD COMPANY, LESSEE, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANTS.

THE LONG DOCK COMPANY, THE ERIE RAILROAD COMPANY, LESSEE, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANTS.

DELAWARE, ETC., RAILROAD COMPANY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANTS.

LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANTS.

CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANTS.

NEW YORK BAY RAILROAD COMPANY, PENNSYLVANIA RAILROAD COMPANY, LESSEE, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT ET AL., DEFENDANT.

Argued January 7, 1925—Decided March 31, 1925.

1. Under the *Certiorari* act (*Pamph. L.* 1907, *p.* 95; *Comp. Stat., p.* 406, § 11) and the Railroad Tax act (*Comp. Stat., p.* 5278, § 16; *Pamph. L.* 1888, *p.* 280), the Supreme Court, on a review by *certiorari* of the assessments levied against the railroad property by the state board of taxes and assessment, is required to reverse or affirm, in whole or in part, for "palpable error" made by the state board of taxes and assessment in making the valuations. There are twenty-five tracts of land involved in these cases under review. The testimony analyzed, compared and *held*, the assessments on twenty of the tracts of land are affirmed, as not excessive, and on five of the tracts of land the assessments are reduced, as excessive, in which there is palpable error.

2. The testimony of the prosecutors must so preponderate as to overcome the judgment of the state board of taxes and assessment and the testimony that supports it before the Supreme Court can or should reduce, alter or modify the assessments.
3. Each assessment of property for taxation is a separate entity, distinct from the assessment of the previous or subsequent years. Assessments are made each year.
4. The valuations are to be completed by the first day of November following the day fixed for filing reports of railroad and canal property with the state board in each year. The property to be assessed is to be taken and valued in the actual condition in which the owner holds it. The statements to be made by the railroad companies are required to set forth the property as it existed on the first day of January.

On *certiorari.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutors, *Maximilian M. Stallman, Albert C. Wall* and *Robert J. Bain.*

For the defendants, *Edward P. Stout.*

The opinion of the court was delivered by

BLACK, J.

The properties of the United New Jersey Railroad, &c., Company, Pennsylvania Railroad Company, lessee.

The properties involved in this appeal, taxes for 1923, are four tracts of land.

*First Tract.*—30.564 acres assessed at $95,000 per acre; total assessment, $2,903,580.

*Second Tract.*—3.623 acres assessed at $95,000 per acre; total assessment, $344,185.

*Third Tract.*—98.835 acres assessed at $88,100 per acre; total assessment, $8,707,363.

*Fourth Tract.*—6.682 acres assessed at $88,100 per acre; total assessment, $588,684.

The properties of the Long Dock Company, the Erie Railroad Company, lessee.

The properties involved in this appeal, taxes for 1923, are five tracts of land.

*First Tract.*—16.555 acres assessed at $87,000 per acre; total assessment, $1,440,285.

*Second Tract.*—67.830 acres assessed at $90,000 per acre; total assessment, $6,104,700.

*Third Tract.*—2.816 acres assessed at $90,000 per acre; total assessment, $253,440.

*Fourth Tract.*—3.164 acres assessed at $90,000 per acre; total assessment, $284,760.

*Fifth Tract.*—Called the elevator tract land outside of main stem. 10.298 acres assessed at $87,000 per acre. This was assessed by the local assessors prior to 1922; total assessment, $897,200.

This tract is contiguous to the first tract of 16.555 acres.

The properties of the Delaware, &c., Railroad Company.

The properties involved in this appeal, taxes for 1923, are five tracts of land.

*First Tract.*—131.840 acres assessed at $95,000 per acre; total assessment, $12,524,800.

*Second Tract.*—40.068 acres assessed at $96,000 per acre; total assessment, $3,846,528.

*Third Tract.*—1.525 acres assessed at $75,000 per acre; total assessment, $114,375.

*Fourth Tract.*—3.240 acres assessed at $95,000 per acre; total assessment, $307,800.

*Fifth Tract.*—3.728 acres assessed at $96,000 per acre; total assessment, $357,888.

The properties of the Lehigh Valley Railroad Company of New Jersey.

The properties involved in this appeal, taxes for 1923, are three tracts of land.

*First Tract.*—5.941 acres assessed at $40,000 per acre; total assessment, $237,640.

*Second Tract.*—22.543 acres assessed at $40,000 per acre; total assessment, $901,720.

This tract is described on the map and in the testimony as 25.673 acres. Corrected by the state board.

*Third Tract.*—38.380 acres assessed at $65,000 per acre; total assessment, $2,494,700.

This is a portion of the "Morris Canal Grant," called the big basin. The parcel is 38.380 acres. It includes the land of a public waterway two hundred and fifty feet wide, having an area of 12.541 acres. The point made by the company is, that it is not liable for this tax. Its area should be deducted from the assessed area, leaving 25.839 acres, for which the prosecutor claims it is liable for the taxes of 1923, at $65,000 per acre = $1,679,535. A waterway two hundred and fifty feet wide through the big basin was to be conveyed to the State of New Jersey under an agreement dated November 29th, 1922, in pursuance of the statute. *Pamph. L.* 1922, *p.* 367. This point is disposed of in our opinion, this term, in case of *Lehigh Valley Railroad Co., Lessee,* v. *State Board of Taxes and Assessment.*

The properties of the Central Railroad Company of New Jersey.

The properties involved in this appeal, taxes for 1923, are six tracts of land.

*First Tract.*—6.302 acres assessed at $40,000 per acre; total assessment, $252,080.

*Second Tract.*—71.300 acres assessed at $40,000 per acre; total assessment, $2,852,000.

Reduced by the Supreme Court to $28,000 per acre for the taxes of 1922. Affirmed, at that figure.

*Third Tract.*—84.724 acres assessed at $30,000 per acre; total assessment, $2,541,720.

Reduced by the Supreme Court to $20,000 per acre for the taxes of 1922. Affirmed, at that figure.

*Fourth Tract.*—96.049 acres assessed at $25,000 per acre; total assessment, $2,401,225.

Reduced by the Supreme Court to $17,500 per acre for the taxes of 1922. Affirmed, at that figure.

*Fifth Tract.*—28.718 acres assessed at $40,000 per acre; total assessment, $1,148,720.

*Sixth Tract.*—24.613 acres assessed at $40,000 per acre; total assessment, $984,520.

The assessments on the first, fifth and sixth tracts of land are affirmed.

The properties of the New York Bay Railroad Company, Pennsylvania Railroad Company, lessee.

The properties involved in this appeal, taxes for 1923, are two tracts of land.

*First Tract.*—12.731 acres assessed at $20,000 per acre; total assessment, $254,620.

Reduced by the Supreme Court to $16,000 per acre for the taxes of 1922. Affirmed, at that figure.

*Second Tract.*—343.137 acres assessed at $20,000 per acre; total assessment, $6,862,740.

Reduced by the Supreme Court to $15,000 per acre for the taxes of 1922. Reduced to $16,000 per acre.

These properties, as to location and description, may be divided into three groups, by way of further identification.

*First Group.* The four tracts of land of the United New Jersey, &c., Company; Pennsylvania Railroad Company, lessee. The five tracts of land of the Long Dock Company, Erie Railroad Company, lessee. These tracts lie between the Pennsylvania railroad and the Delaware, &c., railroad systems. The five tracts of land of the Delaware, &c., Railroad Company, fourteen tracts of land. They are contiguous. They are located at the pier head of deep water on the Hudson river. They extend from Exchange place, in Jersey City, to Ferry street, in Hoboken, something over a mile. They lie opposite New York City between Cortlandt and Christopher streets. They are bounded on the south by Exchange place and Montgomery street, on the west by Henderson street, in Jersey City, on the north by Ferry street, in Hoboken, and on the east by the Hudson river. They can be reached from all these streets by the Hudson tubes, by the electric trolley and auto bus

transportation lines, and from all parts of Jersey City and Hudson county. Assessments from $96,000 to $75,000 per acre.

*Second Group.* The three tracts of land of. the Lehigh Valley Railroad Company. The six tracts of land of the Central Railroad Company of New Jersey. Nine tracts of land. These tracts of land lie contiguous to each · other. They are located in part back from the Hudson river and in part on New York bay. They · lie opposite Battery Park, in New York City, from a half to three-quarters of a mile from the nearest point of the United New Jersey, &c., Company lands in Group No. 1. They are bounded on the north by the tide water basin, which extends from the Hudson river to the westerly end, at Jersey avenue, of the 22.543-acre tract of the Lehigh Valley Railroad Company; on the east by other lands of the companies facing the Hudson river and New York bay; on the south by other lands of the Central Railroad Company of New Jersey, and on the west by Jersey avenue and other lands of the Central Railroad Company of New Jersey. Access to these tracts of land from Jersey City is by way of Johnson avenue, a well-paved street running from Grand street to the Central Railroad Company's ferry; it runs between the first and sixth tracts of land of the Central Railroad Company; and by Jersey avenue. Assessments from $40,000 to $25,000 per acre.

*Third Group.* New York Bay Railroad Company, Pennsylvania Railroad Company, lessee. Two tracts of land. They are from two and one-half to two and three-quarter miles from the nearest point of the lands of the Central Railroad Company of New Jersey, in Group No. 2. They lie west of Caven Point and the lands of the National storage docks. They are near the Bayonne city line. They extend from the Morris canal, south, into New York bay, something over a mile. There is no practical access to these lands across the Morris canal from Jersey City. They are assessed at $20,000 per acre.

There are eleven reasons filed for reducing the assessments.

JANUARY TERM, 1925. · 309

*101 N. J. L.*    United N. J. R. R., &c., Co. v. State Bd., &c.

They all, however, turn substantially upon one point, viz., the valuations are in excess of the true value of the lands, according to the legal evidence before the state board of taxes and assessment.

The Supreme Court is therefore called upon in the exercise of its duty, not only under the *Certiorari* act (*Pamph. L.* 1907, *p.* 95; *Comp. Stat., p.* 406, § 11), but also under the Railroad Tax act (*Comp. Stat., p.* 5270, § 13; *Pamph. L.* 1888, *p.* 277, § 13), to examine and analyze the evidence to reverse or affirm, in whole or in part, for "palpable error" appearing in the record.

*Long Dock Co.* v. *State Board of Assessors,* 89 *N. J. L.* 118; *affirmed,* 90 *Id.* 701. To ascertain whether the amount of the tax is excessive or insufficient, or whether the principles upon which the assessments are made are erroneous. *Long Dock Co.* v. *State Board of Assessors,* 86 *Id.* 592; *Long Dock Co.* v. *State Board of Assessors,* 82 *Id.* 21.

We proceed, therefore, to examine, compare and analyze the evidence under which the state board fixed the values and made the assessments. The evidence consists of two classes, viz., the opinion of witnesses as experts and the sales of other lands. What is legal evidence and the rules under which the evidential value of such testimony may be determined have been clearly stated by the Court of Errors and Appeals in the case of *Brown* v. *New Jersey Shore Line Railroad Co.,* 76 *N. J. L.* 795. In that case, it is said, a knowledge of such sales is of value in qualifying a witness to give opinion evidence. So, such sales are also competent evidence. The evidential value is a question of fact. Many factors are involved, such as length of time and distance, area, depth and shape of the tracts of land compared. All surrounding circumstances and conditions should be considered by the witnesses in forming an opinion. All of these elements doubtless were considered by the state board in the performance of its duty, "using their personal knowledge and judgment," as directed by the statute, in fixing the value of the tracts of land under investigation.

We have considered all these elements in our examination, comparison and analysis of the testimony in the record. *Long Dock Co.* v. *State Board of Assessors, supra.*

The state called three opinion witnesses. Mr. Frederick Dunham, who lives in Jersey City, has been a civil and harbor engineer of Jersey City since 1912, and has had experience in the sale and appraisement of shore front properties in Hudson county since 1882. Mr. Thomas P. Graham, who lives in Paterson, is a real estate broker, specializing in commercial water fronts all around New York harbor. Mr. Charles Singer, Jr., who lives in the Town of Union, Hudson county, is in the real estate business and has devoted twelve years to shore front property. The testimony of these witnesses covers five hundred and thirteen pages of the printed record.

The prosecutors called four opinion witnesses. Mr. Robert Huntley, who lives at Ridgewood, New Jersey, is a real estate broker and appraiser in New York City. Mr. Thomas A. Ryer, who lives in Jersey City, and is also in the real estate business. Mr. Charles W. Morrison, who is a valuation engineer and land appraiser, and in the general real estate business. Mr. Floyd S. Corbin, who lives in Eighty-sixth street, and is a real estate broker in New York City. The testimony of these witnesses covers seven hundred and sixty-two pages of the printed record. The testimony of the experts is made into schedules attached to and returned with the printed books. It is quite apparent from reading the testimony of these witnesses, that different conclusions may be drawn, as to its evidential value.

Nearly all the witnesses agree and testify, that lands in all parts of Hudson county have been increasing in value since 1916 and, when the testimony was taken, the price level or peak of prices had not then been reached.

The sales of other lands from which a comparison is made with the lands under investigation are made into schedules. *Exhibit P-24,* page 1657. Those of the prosecutors, called Hudson river water front sales, are twenty-one in number; in point of time, they run from the year 1911 to 1920; in price, from $14,316 to $68,200 per acre; in area, from 4.396

acres to 81.130 acres. Most of these sales are of lands lying in Weehawken, West New York and North Bergen, Hudson county. Weehawken is one and one-half miles from the nearest point of the lands in group No. 1; West New York, three miles, and North Bergen, four and one-half miles.

Kill Von Kull water front sales. Nine in number; in point of time, they run from the year 1911 to 1918; in price, from $56,380 to $25,128 per acre; in area, from 1.117 to 13.800 acres.

The New York bay water front sales. There are five of these; in point of time, they are all in 1916; in price, they range from $3,457 per acre to $7,709; in area, from 6.32 acres to 289.62.

Lehigh Valley Harbor Terminal Railway Company. There are three of these. They are all in 1916; in price, they range from $5,340 to $8,853 per acre; in area, from 13.20 to 289.62 acres.

The schedules for the state, called sales of lands back of water front, Bayonne, New Jersey; thirteen in all; in point of time, they run from 1915 to 1920; in price, from $8,370 to $16,883 per acre; in area, from 0.221 to 21.020 acres.

Back of Newark bay, six in all; in point of time, they run from 1914 to 1921; in price, from $3,778 to $15,873 per acre; in area, from 0.165 to 8.700 acres.

Sales of lands back of water front, Jersey City, New Jersey, and back of New York bay, fifteen in all; in point of time, they run from 1913 to 1921; in price, from $3,000 to $15,000 per acre; in area, from 0.230 to 28.063 acres.

Back of Hudson river, twenty-eight sales in all; in point of time, they run from 1914 to 1921; in price, from $23,800 to $134,000 per acre. These include seven sales within the bounds of group No. 1, as follows: $134,000, $108,000, $95,900, $93,200, $81,200, $72,800, $72,700 per acre. Manifestly, widely different conclusions will be drawn from a use of these sales in comparing the lands to be valued, unless caution and good judgment are used in their application. The first group are the tracts of land on the pier line of the Hudson river.

The state's witnesses valued these lands from $130,000 to $108,000 per acre.

The witnesses called for the railroad companies valued the lands from $83,520 to $41,547 per acre. By subdividing the tracts, Morrison valued 4.172 acres of the 67.830 acres of the second tract of the Long Dock Company at $95,000 per acre, and 3.24 acres of the 40.068 acres of the second tract of the Delaware, &c., Railroad Company at $87,000 per acre. Morrison valued 6.85 acres of the 30.564 acres, the first tract of the United Railroad of New Jersey at $87,000 per acre; Corbin at $87,000 per acre for 6.674 acres. Ryer valued 6.735 acres of the 30.564 acres, the first tract of the United Railroad, &c., Company, at $87,120 per acre, and 8.978 acres of the third tract at $87,120 per acre. There are in the schedule of sales (*Exhibit P-15,* page 1624) of lands back of Hudson river, sales in 1918, at $95,900, $108,000, $72,700 per acre, in 1920 at $134,000 and $93,200 per acre, in 1917 at $81,200 per acre, in 1915 at $72,800 per acre.

The second group are those of the Lehigh Valley and Central Railroad Company of New Jersey.

The state's witnesses valued these lands from $76,230 to $35,000 per acre.

The witnesses called for the railroad companies valued these lands from $25,000 to $15,000 per acre.

The third group are those of the New York Bay Railroad Company, the Pennsylvania Railroad Company, lessee.

The state's witnesses valued the lands from $30,492 to $25,000 per acre.

The witnesses called for the railroad company valued these lands from $15,000 to $12,000 per acre.

It seems quite difficult to apply this conflicting testimony and it becomes most confusing when an attempt is made to harmonize it.

The companies are required to make returns to the state board; the statute (*Pamph. L.* 1918, *p.* 1078, § 2) provides, that on or before the 1st day of March in each year, statements or schedules setting forth the property of the railroads or canals, as it existed on the 1st day of January preceding,

shall be returned to the state board, but such returns shall not be conclusive, the state board shall ascertain the necessary facts from the best information they can obtain "using their personal knowledge and judgment." *Comp. Stat., p.* 5272, § 460. By *Pamph. L.* 1922, *p.* 14, § 5, the board shall complete their valuations by the 1st day of November following. Each annual assessment of property for taxation is a separate entity, distinct from the assessment of the previous or subsequent years. Assessments are made each year. *Liquidating Commissioners* v. *Marrero,* 106 *La.* 130, 132. The assessments must relate to the day in each year when by law the assessments are to be commenced. *Shippen* v. *Harden,* 34 *N. J. L.* 79.

The property to be assessed is to be taken and valued in the actual condition in which the owner holds it. The question is not what would this or that part of it sell for, if separated from the rest, but what would the property as it is, as the owners actually holds it, sell for at a fair private sale. *Colwell* v. *Abbott,* 42 *N. J. L.* 111, 115.

Our reading of the record leads us to the conclusion that the assessments in group No. 1 are not in excess of their true value. They are therefore affirmed.

The assessments are below the values fixed by the expert witnesses for the state. There are sales of land at $134,000, $108,000, $95,000, $93,200, $81,200, $72,800 and $72,700 per acre in the immediate vicinity and within the bounds of group No. 1. These lands so compared are not on the water front of the Hudson river.

We cannot reverse, in whole or in part, such assessments, either under the *Certiorari* act (*Comp. Stat., p.* 406, § 11), or under the Railroad Tax act of 1888 (*Comp. Stat., p.* 5270, § 457), because "the amount of tax is excessive, or because the principle upon which the assessment is made is erroneous."

We cannot alter or annul these assessments, to use the expressive language of Chief Justice Beasley, in the case of the *Central Railroad Co.* v. *State Board of Assessors,* 49 *N. J. L.* 9, "except for palpable error," or to use the language of Mr. Justice Garrison, speaking for this court, in the case

of *Long Dock Co.* v. *State Board of Assessors,* 82 *Id.* 23. We are unable to say that the latter testimony (*i. e.,* of the prosecutors) so preponderates as to overcome the judgment of the board and the testimony that supports it. The assessments are supported by the evidence. *Long Dock Co.* v. *State Board of Assesors,* 89 *Id.* 108; *affirmed,* 90 *Id.* 701.

*Long Dock Co.* v. *State Board of Assessors,* 86 *N. J. L.* 592. As there are 43,560 square feet in an acre of land, measured by units of city lots, twenty-five by one hundred feet, the assessments are at the rate of from $5,000 to $5,600 per city lot.

In Group No. 2 are the two tracts of land of the Lehigh Valley Railroad Company and three of the tracts of land of the Central Railroad Company of New Jersey. Each assessed at $40,000 per acre. The assessments are not excessive. In addition to what was said in group No. 1 of the twenty-eight sales of land back of the Hudson river, there are eighteen sales in excess of $40,000 per acre. They run from $68,000 to $47,100 per acre. In the twenty-one sales of land of Hudson river water front, there are eleven sales of land in excess of $40,000 per acre. They run from $68,200 to $40,600 per acre.

These tracts of land are contiguous to each other. The 22.543 tract of land of the Lehigh Valley Railroad Company is on the tide water basin. It has adjacency, proximity and accessibility to tide water, which is an element of value. *Long Dock Co.* v. *State Board of Assessors,* 89 *N. J. L.* 108, 112; *affirmed,* 90 *Id.* 701. It is reached from the Hudson river through the tide water basin, and from Grand street by way of Jersey avenue, two of the main traveled arteries of Jersey City, Grand street running east and west, Jersey avenue north and south. Next to this is the 5.941-acre tract, main stem of the Lehigh Valley Railroad Company. Next to this is 24.613-acre tract. Then, next to this is the 6.302-acre tract, main stem, and next to this is the 28.718-acre tract of land of the Central Railroad of New Jersey. These tracts of land are also reached from Jersey City by Johnson and Jersey avenues, Johnson avenue, running between the first and sixth tracts of the Central Railroad Com-

pany.   The assessments of these five tracts of land are affirmed.   Measured by units of city lots, twenty-five by one hundred feet, the assessments are at the rate of something less than $2,500 per city lot.

The remaining three tracts of land in group No. 2 of the Central Railroad Company of New Jersey.   They can be reached only from New York bay and by crossing other tracts of the Central Railroad Company.   The 71.300-acre tract, assessed at $40,000 per acre, was reduced by the Supreme Court for the taxes of 1922 to $28,000 per acre; the 84.724-acre tract, assessed at $30,000 per acre, was reduced by the Supreme Court to $20,000 per acre.   These two tracts of land are contiguous.   The 96.049-acre tract, assessed at $25,000 per acre, was reduced by the Supreme Court to $17,500 per acre.   These reductions, as made by the Supreme Court, were affirmed by the Court of Errors and Appeals. 100 *N. J. L.* 131.   The valuations of these three tracts of land are excessive.   They are reduced to the figures fixed by the Supreme Court for the taxes of 1922 and affirmed by the Court of Errors and Appeals.   When so reduced and measured by units of city lots, twenty-five by one hundred feet, the assessments will be at and above $1,000 a city lot.

The third group, the two tracts of land of the New York Bay Railroad Company, Pennsylvania Railroad Company, lessee.

The 343.137-acre tract and the 12.731-acre tract, each assessed at $20,000 per acre.   The 12.731-acre tract was reduced by the Supreme Court for the taxes of 1922 to $16,000 per acre and affirmed by the Court of Errors and Appeals.  100 *N. J. L.* 131.   These two tracts of land are contiguous to each other.   There is no substantial difference in value between these two tracts of land as shown by the evidence.

The valuations made by the state board are excessive. They are reduced to $16,000 per acre for each tract of land. These reductions will make the assessments, measured by units of city lots, twenty-five by one hundred feet, at substantially or a trifle less than $1,000 per city lot.

An order may be entered in accordance with the views herein expressed.