Lavonne **BAZEMORE**, Plaintiff–Appellant,

v.

**COLORADO STATE LOTTERY DIVISION, an agency of the State of Colorado; Colorado State Lottery Commission, an agency of the State of Colorado; and Texaco, Inc., a Texas corporation, Defendants–Appellees.**

No. 01CA0380.

Colorado Court of Appeals, Div. I.

Aug. 1, 2002.

Certiorari Denied March 10, 2003.

 

The Carey Law Firm, Leif Garrison, Robert B. Carey, Colorado Springs, Colorado, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, for Defendants–Appellees Colorado State Lottery Division and Colorado State Lottery Commission.

Holland & Hart, LLP, Todd W. Miller, Denver, Colorado, for Defendant–Appellee Texaco, Inc.

Opinion by Judge WEBB.

Plaintiff, Lavonne Bazemore, appeals the district court's order dismissing her complaint against defendants, Colorado State Lottery Division and Colorado State Lottery Commission (collectively, Lottery) and Texaco, Inc., for lack of jurisdiction based on her failure to exhaust administrative remedies.

We reverse and remand for further proceedings.

According to plaintiff's complaint, she bought tickets for various lottery instant scratch games, including some purchased from Texaco as a licensed lottery sales agent, but later she discovered that the grand prizes for these games had been awarded before she purchased these tickets. She alleged that although the Lottery knew the last grand prize for a particular scratch game had been claimed, the Lottery continued to sell tickets for that game, did not inform potential purchasers the grand prize was no longer available, and instead continued to represent the availability of the grand prize ("win up to . . .").

Plaintiff asserted claims for breach of express contract; breach of express and implied warranties under the Uniform Commercial Code; breach of implied covenant of good faith and fair dealing; violation of the lottery statute, § 24–35–201, et seq., C.R.S. 2001; deceptive trade practices; and unjust enrichment. She sought actual damages, including restitution of revenues from ticket sales after a represented prize was no longer available, as well as injunctive and declaratory relief.

In addition, plaintiff asked for certification of a plaintiff class and a class of defendant sales agents. The trial court did not rule on either aspect of class certification.

Following oral argument on defendants' motions to dismiss, but without conducting an evidentiary hearing, the trial court ruled that adequate administrative remedies existed to address plaintiff's concerns, which it found plaintiff had failed to exhaust. The court further found that none of the exceptions to the exhaustion doctrine applied and therefore dismissed plaintiff's complaint for lack of subject matter jurisdiction.

## I.

Plaintiff argues that because either no administrative remedy is provided or the administrative remedy, if any, is inadequate, she has no obligation to exhaust administrative remedies. We agree.

■ Motions to dismiss for lack of subject matter jurisdiction are governed by C.R.C.P. 12(b)(1). The plaintiff has the burden to prove jurisdiction. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

Appellate courts apply a mixed standard of review in such situations. *City of Boulder v. Public Service Co.,* 996 P.2d 198 (Colo.App. 1999). A trial court's evidentiary findings are reviewed under the clear error standard. *Smith v. Town of Estes Park,* 944 P.2d 571 (Colo.App.1996). A trial court's legal conclusions are reviewed de novo. *Walton v. State,* 968 P.2d 636 (Colo.1998).

■ The exhaustion of administrative remedies doctrine requires parties to pursue available statutory administrative remedies before filing suit in district court. In addition to conserving judicial resources, the doctrine enables the agency to make initial determinations and correct errors on matters within its expertise, while compiling a record that is adequate for judicial review. *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo. 1998).

■ However, the obligation to exhaust remedies arises only if complete, adequate, and speedy remedies are available. *City & County of Denver v. United Air Lines, Inc.,* 8 P.3d 1206 (Colo.2000).

### A.

Determining whether complete, adequate, and speedy remedies are available requires examination of an agency's governing statute, rules, and regulations in light of a plaintiff's complaint. Hence, this threshold issue presents a question of law that we review de novo.

Pursuant to article XVIII, section 2(7) of the Colorado Constitution, the General Assembly enacted the lottery statute, establishing the State Lottery Division to operate and supervise a statewide lottery. The Division includes both the Lottery Commission and the Lottery Director. Section 24–35–202(2), C.R.S.2001.

The Commission is authorized to promulgate rules and regulations governing the

types of lotteries to be conducted, the number and sizes of prizes to be awarded, and the manner of selecting winning tickets or shares. Section 24–35–208, C.R.S.2001. The Commission is empowered, but not required, to conduct hearings on complaints charging violations of the lottery laws and rules or regulations promulgated thereunder and "such other hearings as may be provided by rules of the commission." Section 24–35–208(1)(b), C.R.S.2001.

The lottery statute mandates a hearing only in connection with the grant, suspension, revocation, or renewal of sales agent licenses. Section 24–35–206(3), C.R.S.2001. It does not otherwise require exhaustion of administrative remedies.

We find no statutory provision, rule, or regulation that addresses the claims set forth in plaintiff's complaint, let alone provides complete, adequate, and speedy remedies. The only provision remotely applicable to these claims is a rule effective March 2, 2002, providing for a hearing to terminate controversies. *See* Lottery Commission Rule 16, 1 Code Colo. Regs. 206–1. However, we give no weight to a remedy created only after plaintiff's case had been dismissed.

### B.

We disagree with the trial court's conclusion that the "primary underlying basis of all of the Plaintiff's statutory and contractual claims is that the Lottery violated its own statute." Only one of plaintiff's seven claims for relief alleges a statutory violation that might be the subject of a hearing under § 24–35–208(1)(b). Nothing in the lottery statute addresses plaintiff's basic complaint that the Lottery continued to sell tickets and represent the availability of a grand prize after it knew that the prize was no longer available.

Moreover, the extremely general language of the sections cited by the Lottery does not support its assertion that plaintiff's claims would, if true, constitute statutory violations. *See* § 24–35–204(3)(m), C.R.S.2001 (director is authorized to "take such action as may be necessary to protect the security and integrity of the lottery games"); § 24–35–204(3)(o),

C.R.S.2001 (director determines matters "necessary or desirable for the efficient and economical operation and administration of the lottery"); § 24–35–206(1), C.R.S.2001 (licensing rules include "other matters necessary to protect the public interest and trust in the lottery"); § 24–35–206(2)(a)(IV), C.R.S.2001 (criteria for sales agent license revocation include character "no longer consistent with the protection of the public interest and trust in the lottery"); § 24–35–209(1), C.R.S.2001 (members of the Commission and lottery division employees must "insure the confidence of the people of the state in the integrity of the division, its employees, and the commission").

Accordingly, we conclude that the gravamen of plaintiff's complaint does not fall within the ambit of the Commission's discretionary power to conduct hearings into violations of the lottery statute, rules, or regulations.

### C.

Even as to plaintiff's claim that alleges a violation of the lottery statute, no defined procedures exist for submission, evaluation, and resolution of complaints by ticket purchasers. In our view, mere possession of discretionary supervisory and investigatory power by Lottery officials does not constitute an adequate administrative remedy in the absence of a specified procedure to follow in the event of a grievance. *See City & County of Denver v. United Air Lines, Inc., supra*, 8 P.3d at 1214 (exhaustion required "when an agency directs a party to follow certain administrative procedures consistent with the agency's governing statute or ordinance"); *see also Common Cause v. Board of Supervisors*, 49 Cal.3d 432, 261 Cal.Rptr. 574, 777 P.2d 610 (1989)(continuing supervisory or investigatory power does not afford adequate administrative remedy absent defined procedures).

Requiring exhaustion as to a grievance for which the lottery statute provides no procedures whatsoever—no complaint form, no notice or hearing, and no proposed resolution—would place plaintiff in the untenable position of being denied a judicial remedy despite the absence of any clear administrative remedy.

*See Homeland Stores, Inc. v. Resolution Trust Corp.,* 17 F.3d 1269 (10th Cir.1994)(governing statute provided no administrative remedy for claims arising from RTC's actions).

In addition, the lottery statute does not empower the Commission to award monetary relief. *See McCarthy v. Madigan,* 503 U.S. 140, 147, 112 S.Ct. 1081, 1088, 117 L.Ed.2d 291, 301 (1992)("[A]n administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'") (quoting *Gibson v. Berryhill,* 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488, 498 (1973)); *cf. Davison v. Board of County Commissioners,* 41 Colo.App. 344, 347, 585 P.2d 315, 317 (1978)("The remedies contained in these [tax] statutes are complete and adequate."). *See generally* C. Koch, Jr., *Administrative Law & Practice* § 10.24 at 293 (Supp.1996).

■ Thus, we conclude that affording the Lottery an opportunity to hold a hearing on plaintiff's complaint for money damages would carry with it no assurance of complete or effective relief.

### D.

The Lottery argues that plaintiff's claims are "complaints about the implementation of Lottery games" which could be resolved by the Commission under various lottery game rules, citing Lottery Commission Rules 5.12(a) (Number and Size of Prizes), 5.16 (Manner of Selecting Winning Tickets), and 5.14 (Termination Date and Claims Period). We are not persuaded.

Only one of plaintiff's claims asserts a violation of the lottery rules. This claim does not specify the rule allegedly violated.

The rules cited by the Lottery do not address either continuation or termination of a game based on unavailability of the represented grand prize. To the contrary, Rule 5.14 affords the Director unfettered discretion to set the termination date of a game.

Moreover, Lottery Commission Rule 5.8 obligates each ticket purchaser to comply with "all final decisions of the Director, and all instructions and directives established by the Director." Even assuming that the Di-

rector were empowered to resolve disputes over winning tickets, plaintiff was not and could not have been a winner of the grand prize, nor does she claim to have won any prize.

### E.

Nevertheless, the Lottery argues that adequate administrative remedies exist because plaintiff could have invoked the hearing process established by the State Administrative Procedure Act (APA), § 24–4–101, et seq., C.R.S.2001. While the Commission is an executive department agency and therefore subject to the APA under § 24–4–107, C.R.S. 2001, we do not agree that the APA provides an adequate remedy.

The Lottery's argument conflates the preliminary question of a right to a hearing with the subsidiary question of procedures governing that hearing. The APA supplants other statutes by providing hearing procedures where "an opportunity for agency adjudicatory hearing is *required* under the state constitution or by this or any other statute." Section 24–4–105(2)(a), C.R.S.2001 (emphasis supplied). We find no hearing requirement in the lottery statute concerning complaints such as plaintiff's against the Lottery.

The APA provides an independent right to a hearing in only two areas: rule making, § 24–4–103(4), C.R.S.2001; and licensure, § 24–4–104(6), (9), C.R.S.2001. Thus, as relevant here, the APA does not create any right to a hearing.

The Lottery's reliance on *Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332 (Colo. 1997), is misplaced. That case dealt with the license revocation hearing required by § 24–35–206(3), which incorporates "all requirements" of the APA.

■ Hence, the APA does not change our conclusion as to inadequacy of the administrative remedies.

### F.

Finally, the Lottery contends, and the trial court determined, that exhaustion of adminis-

trative remedies should be required to create a fully developed factual record, which would both reflect the Lottery's expertise and conserve judicial resources. We disagree.

Initially we note that where, as here, we have discerned the absence of even minimal administrative procedures, we cannot assume that the Lottery would develop an adequate factual record upon which reviewing courts could base their decisions.

Moreover, the trial court identified the basic factual issues as, "when the Plaintiff purchased her particular ticket or tickets, where she purchased said tickets, whether she read the language on the ticket prior to her purchase, when the last grand prize was won or claimed, and whether Plaintiff won any prizes other than the advertised grand prize."

We perceive nothing in these issues that calls for the particular expertise of the Lottery. The Lottery agrees that its advertising and some game tickets include the phrase "Win up to [the grand prize amount]." In our view the Lottery has no expertise to decide whether this language potentially misleads consumers who purchase tickets after the grand prize has been claimed.

In light of our conclusion that adequate administrative remedies are lacking, exhaustion could not be required merely to conserve judicial resources. Regardless, we are not persuaded that resolving these factual issues would place any unusual burden on the trial court. In its answer brief, the Lottery admits that "[o]n occasion, an instant game remains available for sale even though the last top prize has been claimed." Each of the other facts would be within plaintiff's knowledge or otherwise readily ascertainable.

 Therefore, we conclude that the trial court erred in dismissing the case for lack of subject matter jurisdiction based on failure to exhaust administrative remedies.

## II.

Plaintiff argues that she has pleaded claims against Texaco which are not subject to the exhaustion requirement. As a result of our ruling that exhaustion was not required, we need not address this contention.

## III.

The trial court did not expressly rule on defendants' argument that the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S.2001, bars plaintiff's claims. It offered several "observations," including the belief that "[p]laintiff's claims are, in fact, more in the nature of a tort." In its answer brief the Lottery states, "This court does not have jurisdiction to review this issue because the trial court did not formally address it."

We agree that the issue of governmental immunity may require factual determinations and that, hence, the trial court should first address this issue. We therefore conclude that the issue is not properly before us.

The order is reversed, and the case is remanded for further proceedings.

Chief Judge HUME and Judge CASEBOLT concur.